is performing, whether the chair does it himself or herself, or whether the chair delegates it to somebody else, the chair ultimately has to decide whether to retain that graduate student or let that graduate student go after the semester. How about a faculty member saying, I would like that graduate student to assist me. Would the department chair be the one that would assign that graduate student to a particular Ultimately, it would be the chair's decision whether to approve or disapprove that retention of that graduate student. What you'll probably hear is that some chairs may decide to collaborate with their faculty and find out whether or not that will be a good fit. But yes, at the end of the day, the university maintains its chair's decision. And there may be some consultation with higher level deans as well. Thank you. I'm Assistant Attorney General Christina Hansen on behalf of the Illinois Educational Labor Relations Board. By title alone, department chairs seem like the type of high level position that is aligned with management. But to be excluded from bargaining under the Act, the university was required to show that chairs fell within one of the three statutory exclusions. That they were confidential employees, managerial employees, or supervisors under the Act. The university here failed to do so. As the board found, under the university statutes, the faculty itself is the responsible party in the teaching, research, and scholarly activities of the university. The statutes provide that each college or other academic unit shall be governed in its internal administration by the faculty pursuant to bylaws that are established by the faculty. Under the shared governance model, chairs work with the faculty of their department in operating the department. As Dean or Manager described it, they are a spokesperson for the department and expected to take a leadership role in making sure that the department completes its responsibilities and communicates information to the university. But in that role, they represent the department to higher levels of university management, not the other way around. As the university statutes provide, chairs act independently only in such matters as are delegated to them by the department's executive committee. Their authority to exercise independent judgment thus emanates from the faculty itself. And they work collaboratively with faculty to make those decisions. Their role is not in directing the faculty, it is in coordinating the work of the department with the faculty. Additionally, it's important to note that chairs rotate, chairs often rotate terms such that tenured faculty members take turns assuming those responsibilities. And if a tenured professor's chair term ends, that chair goes back to being a regular tenured system faculty member. And thus... Well, if it's a department chair that's particularly popular with the dean, and as far as the faculty are concerned, there's no movement to replace them, could a department chair have some longevity? Sure, they could. They typically serve a three-year term, but they can serve multiple three-year terms. But ultimately, the faculty can choose to remove their chair, they can vote their chair out. And the selection of a chair is subject to dean approval, but it's generally done by both the faculty... How about the removal? The faculty can vote... Is that subject to the dean's approval also? I believe that it is, and there was one... And does the dean also have the power to remove a chair without input, well, maybe with input, but without honoring what the faculty might want? I think the decision of actually selecting the chair is put to a vote by the faculty, and so... I'm asking, you've got a chair. The dean thinks they're not doing their job. Can a dean remove the department chair, even if the faculty has not taken a vote on it, or they're not even consulted about it? There's no evidence of that in the record. There's no evidence that the dean could do that in the record. The evidence in the record suggested that chairs have done that. They have made the decision to remove a chair and appoint a new one, and have informed the dean that they made that decision. But there's nothing in the record indicating that the dean could... Is there anything in the record about the chancellor or provost or dean calling the department heads together and saying, hey guys, and you might not have it in this instance, with this particular campus? Fundraising is an issue. Department chairs, because they are the voice and face of that department, are going to have to begin to engage in fundraising and friend raising. In addition to urging faculty to do the same. Is there anything in the record like that? Or that that being a responsibility that's delegated down or directed down from deans or the provost? Not that I'm aware of. I guess I'm not really sure. Can the higher levels of administration say that there's a particular function that they want the department... Sure, but it would be a collaborative process among the department... Do you think faculty would be enthusiastic about fundraising and friend raising? No, I'm not really sure I understand your question. Well, since universities now probably receive less than 20% of their funding from the state, even universities that are well off with funds sometimes find it necessary to engage in capital campaigns or fundraising efforts. And you can't just have that done. Or the movement is not to just have that done by development officers and presidents and Because department chairs want unrestricted funds to spend on travel for graduate students or unrestricted funds to help with things going on in the department. And I'm asking if those... And it may be that that didn't come up in this case. But the department chairs would have to take an active role in making sure that they and their Sure, that's not in the record. But from the evidence in the record and from the way that the university is structured and the university statutes are structured, if that is something that becomes a responsibility of the department, then the department would work, the faculty would work collaboratively. You're assuming that they would work collaboratively. Or would the dean tell them, you have to come to these cocktail parties that we're having with potential donors. Sure, and the dean as a part of higher administration would have the authority to do that. And the department chair is the one that has to effectuate it. Well, the department faculty works collaboratively and the dean would have only that authority given to it by the department faculty to determine how that department was going to represent itself and accomplish the objectives that higher levels of university administration have required of it. And that is why chairs are not managerial employees. The hallmarks of manager status are final responsibility and independent authority to establish and effectuate policies and the consequent alignment of that employee's interest with management. And there was no evidence of that in the record here. Rather here, the chairs were part of their department and representing their department up to higher levels of university administration. What percentage of faculty are not in a bargaining unit? Are the non-tenure track faculty in a bargaining unit? They are. They're in a separate bargaining unit. And then there's a separate bargaining unit for the tenure system faculty. Does the department chair have more authority over the non-tenure track faculty than the tenure track faculty? The non-tenure system faculty being the adjunct faculty? Yes, adjuncts. The board did find that chairs have the authority to hire and retain adjunct faculty. Let's say what percentage of the faculty on campus in these 28 departments or 28 department chairs, what percentage of the faculty is non-tenure track or adjunct? It varies from department to department. I'm talking about the total. I looked at it and just guessing the percentage, 40 plus percent of the faculty that are being supervised by department chairs as a whole are non-tenure track. I think that's about accurate. It might be 37 percent or 42 or whatever. Would you agree that that's significant? It is and it varies from department to department. But even to the extent that chairs exercise independent authority in hiring and retaining faculty, that role is not so important in their, is not uppermost in importance and influence in their position. The university has to hire adjuncts because they can't afford it. They do, but you have to look at the responsibilities of the chair itself. And most of the chairs testified that only about a third of their employment time is spent on chair responsibilities with the other two-thirds going to their regular teaching and service. But some of the department chairs said it was more than 50 percent. One of the chairs said that. One? Only one said that it was more than 50 percent. The average was about a third of their employment time. And so when you couple that with the sort of non-managerial, the non-adjunct, the responsibilities that the chair has with respect to chair duties that are not related to their responsibility in hiring and retaining adjuncts, then it becomes clear that the hiring and retaining adjuncts is not uppermost in importance or influence with respect to their job responsibilities. I'd also like to briefly address the point that Council made about confidential employees. Involvement in the... Your time has expired, but I'm going to let you speak on that for just a moment. Okay. Involvement in the grievance process alone does not establish that an employee is confidential. The university points to a board decision, which is actually an ALJ decision, and as he indicated, it's non-precedential. It's important to note that in the case that he cited, the employees at issue were already determined to be supervisors. They were already... They already had authority to discipline employees and also to adjust grievances. And so the determination that they were confidential employees is based in part on those factors, which is different than what we have here. Our tenure system faculty members are not subordinates of the chair. They are colleagues of the chair. And there's nothing in the record indicating that chairs have any authority to discipline other faculty members. And there's no reasonable... There was no evidence suggesting a reasonable expectation that they would actually be adjusting grievances and therefore obtaining the type of confidential information that would make them confidential employees. All right. Thank you. Your side will have more time to rebuttal. Or no, you won't. My mistake. May it please the court. My name is Steve Elkitch and I represent the Affiliate University Professionals of Illinois Local 4100. So I think that the easiest way to conceptualize this case is to take a look at what the undisputed evidence is with respect to what chairs do. Chairs have faculty appointments. Almost every chair spends at least half of their time teaching. And all of the chairs who testified, including the chairs qualified by management, had active research and service responsibilities. Now in addition to that, there are some duties that chairs have that are different than faculty but that are not supervisory. So for example, chairs have more responsibilities with respect to faculty advising. And faculty advising is a core faculty obligation under the University of Illinois statutes and under the faculty personnel policy. Chairs are responsible for pushing paper.  Even though they don't have any more voice than other faculty members in terms of who gets hired to a regular position, who gets promoted, and who gets tenured. So if you add those things up, the question that you have is whether the university has carried its burden of showing that the preponderance of their employment time or their predominant duty is supervisory or managerial. And whether you can say that the decision of the administrative agency which weighed these facts, weighed the conflicting testimony, weighed the impact of the university statutes, is clearly erroneous. And I submit, given the undisputed facts about what virtually all chairs do with their time, really support the decision of the administrative agency. And surely refute any allegation that the administrative agency was clearly erroneous when it decided that they were not supervisors in this case. They teach, they do research, they do service. And in addition to that, number one, in most departments they rotate. We had a couple of long-serving chairs who testified, but in most departments they rotate. And number two, the faculty in a department can get rid of their chair if they don't like it. And we even had a concrete example of that in the testimony in this case where the Department of Legal Studies met. They decided they didn't like their chair. They decided to take the chair out of the chairmanship, put somebody else in, and inform the dean's office and then went on with their other departmental duties. And there was no evidence that the dean's office had any say whatsoever in what that department did. Is there anything in the record that shows the dean could have done otherwise? So if you look at the faculty personnel policy of the university on page 43, and I can get you a record site on that in a second. The faculty personnel policy is employer exhibit 8. And so the C site starts with 1169. Look on page 43. It says that either the department or the dean may initiate discussions to remove a department administrator. Normally requires concurrence of both the department and the dean. And it goes on to say, in the event that a department votes to remove and the dean wants to retain the chair, the dean may ask for a second vote. If a simple majority of the department votes to remove, this is on the second vote, the process to appoint a new department administrator will begin. So that, given the evidence we have of how the Department of Legal Studies acted, I think that pretty clearly indicates that if the department puts their foot down, the dean has no choice but to appoint a different chair. What about the situation where the dean becomes disenchanted with the department's chair and wishes to discharge regardless of what the faculty thinks? There was no testimony in the record on that issue. So the only thing we have to go on is this clause that I just read. And in the clause that I just read, it says that removal normally requires the concurrence of both the department and the dean. So if the dean is really upset and the department says we love him, they would be at loggerheads. I don't think the dean would be able to do it because there's no provision. Why does it say normally? I thought that was the first thing. It does say normally, you're right. Which means it's not explosive. We had no evidence about how this actually was mispracticed. We only had evidence about how a department can remove a chair. Now, the other point that I would like to make is that the university council would have you believe that this is all a difference of management style. Some chairs are collaborative and some are hierarchical. And that it's really up to the chair to decide that. That statement is not true to the record. It is not true to the university statutes. Because the university statutes specifically deal with the power of the chair and the power of the faculty. And they say that the chair shall have power to act independently in such matters as are delegated to the chair by the executive committee of the department. The executive committee is the ordinary faculty of the department. They further say that, for example, on budget, that the chair's job is to collaborate with the executive committee in the preparation of the budget and be responsible for the expenditure of funds for the purposes approved by the executive committee. And they further say that the chair, together with the executive committee, is responsible for the organization of the work of the department and for the quality and efficient progress of that work. The collaboration is not a function of management style. It's a function of university statutes. That's what the U of I requires. So, in the case that arose on Sangamon State in the late 80s with the center directors, the court looked at the issue of managerial. And it said it was a close question because the center directors had half-time faculty appointments. In this case, the faculty have full-time faculty appointments. And the evidence shows that they spend most of their appointments, even as chairs, doing faculty duties. So, I think that if you take the whole thing with respect to managerial... You mean all of the department chairs, or most of them, continue to teach two or three classes? Yes, yes. And they continue to have active resource agendas. And they continue to have service to the university community. But if you're a full-time faculty member, you'd be required to teach three. Is that correct? That's right, that's right. So, if you only teach two as a department chair, your faculty responsibilities have been somewhat reduced. They have. Even though, for purposes of research and advancement and educational purposes, you would do research aright. That's right, that's right, that's right. The point being that, if you look at the word predominant in the definition of managerial, the court in the prior case, in the fourth district, held that 50%. Boy, that was really close to predominant. And here, the evidence quite clearly indicates that chairs have more than 50% faculty duties and a complete faculty appointment. Let me ask you the same question about the adjuncts. Yes. Was there any evidence where departments had more than the average or a lot of adjuncts? Was there any evidence about how that department functioned? Sure. Regarding the department chair saying, we're only going to have four adjuncts this year, or we've had six or seven in the past, which means you're going to have to take up additional teaching load. So, the loads of regular faculty members are controlled by the faculty personnel policies, which say that the normal load is... You mean we have to drop class? Well, just... I'm sorry. Really, I'm going to get to your point if you'll excuse me. I'm trying to get there. I'm just not as fast as you are, Judge. The loads are controlled by the faculty personnel policy. And the faculty personnel policy provides that if a chair wants somebody to teach an extra class, they can go to that person and ask. And if the person says, no, I don't want to do it, then the person can be given an overload assignment. And the evidence in the record was that in terms of regular faculty, it was always worked out. No chair ever had to tell a faculty member, you teach this class or you teach this overload. It would always work it out. So, in the departments with... There are some departments without any adjunct faculty, where the faculty take it upon themselves, geez, we've got to have regular faculty for all of our students. But there are some departments with lots of adjunct faculty. And in those departments, the chair does have responsibility for determining who gets hired off of last year's list and who comes back from year to year. There was no evidence in this case with respect to the amount of time that discrete function took. And there was plenty of evidence that university-wide, chairs had responsibilities that... faculty responsibilities that well exceeded 50%. So, if you take the lack of evidence put on by the university and the positive evidence put on by the chairs in this case, then your issue really is, well, did the administrative agency clearly err when it laid that evidence? And I don't think you can say on this record. Your time has expired. Can I say one thing about confidential? One thing. We actually pay attention to this. And I do appreciate that. And I apologize, Ron, I really do. The evidence in this case was that the university had proposed that chairs be the first step in the grievance procedure and that the union had proposed that they not. So, all the evidence there is. I submit that leaves you at Equipoise. Because you don't know who's going to win that contract argument. All right? And if you're at Equipoise, it is, again, management's burden to prove the exclusion. And I don't think that the agency clearly erred when it determined that management had not carried that burden. Thank you. And thank you, Your Honor. And I appreciate that. Rebuttal? Yes. Thank you. Just to clarify one or two things that were mentioned during the response. There is testimony in the record as to whether or not the dean can remove a chair. On page 318 of the hearing transcript, the provost, who was actually once a dean himself, Mr. Ermatinger, actually testified as follows. Quote, if the dean believes that the chair should be removed, they may discuss that with the department. The department may or may not agree with the dean, but the dean may still move forward and remove the chair. And at that point, an election for a new chair would take place. That is not contradictory. So, just to clarify that point. One or two other points of clarification. I believe it was mentioned that the non-tenured faculty, such as adjuncts, are organized at UIS. They are not organized. They are not currently part of a bargaining unit. Up at UIC they are, but not at UIS. And also, to address one or two other minor points. There was some talk just now about whether or not chairs rotate, and the frequency with which chairs will ascend the position of a chair. It is varied. There was some testimony that in one of the departments, and I believe Steve was right, legal studies, that they actually had a practice of rotating. Because of the time commitment that the chair duties took, I think you heard testimony during the hearing, and you'll see that in the transcript, that certain faculty don't like to do it. It's a burden. It takes them away from their teaching responsibilities. And so they decided to share that. And so after so many years, the faculty would vote another one of them, one of their own fellow members to actually ascend and be a chair. That is not how it's done in other departments. Other departments, they have very long-term chairs who everybody is comfortable with. The chair is comfortable with his duties, and that chair remains in that position long-term. The one piece of evidence that was cited about the department notifying the dean, I remember that discussion very clearly. I just reviewed it last night. The testimony on cross-examination was that the faculty did not know what, if any, review or what, if any, interface there had been at the dean's level and above. So as far as the record shows, the dean approved the replacement of the chair. There is no indication that the department did it independent of or in lieu of the chair's oversight ability. With that, with those few points of clarification, I would just like to renew the university's request that the decision of the Ed Board be reversed and that these 30 chairs be excluded from the bargaining unit in question. Thank you. We'll take this matter under advisement. Thank you. Up or down? None. It has to be up or down. Yeah. Yeah. Maybe more. You can't bring it all the way to the front, can you? I'd say leave it. No. Your Honors. Really, what this case boils down to is the cardinal sin of proportionate penalties of jurisprudence. The legislature made two different judgments about the seriousness of one offense. And the legislature did that when in 1977 it amended Section 11-403 of the Motor Vehicle Codes to make it a Class A misdemeanor. Now, as the briefing shows, Section 401, which is the section under which Mr. Peterson was convicted, was and has long been a felony. However, in 1977, what had been – Section 403 had been the elements that are required to be satisfied under Section 401. But by adding a penalty to it, they created a separate offense that's essentially identical to 401. Well, what about the section in the statute that says that for purposes of this section, personal injury shall mean any injury requiring immediate professional treatment in a medical facility or doctor's office. Isn't that quite a state from the other statute? I guess, Your Honor, I don't think so because in any case, if you say what happened in this case, knock someone off their bike or smack them in their car, you are required to stop. You are required under both statutes at least to inquire as to whether the person needs aid. And you are required to stay on the scene until that determination has been made. But the personal injury component of 401 is that the injury requires immediate professional treatment in a medical facility or doctor's office. And that is not in 403. That's true, Your Honor. However – Isn't that significantly different in terms of the seriousness? I mean, they're trying to say if the person is hurt so that they require medical attention and they actually go and get it, that's worse than the other. I mean, that's an element of the offense, in effect, when they describe what they mean. And it says for purposes of this section. It doesn't say it for purposes of both these sections, just this section. That's correct. But to comply with 401, if there's any injury whatsoever, you must – if there's any injury whatsoever under 403, you must stop and at least offer assistance, regardless of the severity of the injury. When I was preparing for this argument, you know, it occurred to me that this might be an avenue of questioning from you. And I just go back to the fact that 401 has incorporated 403. But then if a prosecutor is trying to decide how to charge you and the person is not injured at all, but you violate the provisions of 403, but in the other instance, the person has to be taken to the hospital, whether it's quite severe or just, you know, it's a fractured leg that's going to heal quickly, which would still be not a good injury. I mean, isn't that different if I'm a prosecutor and I'm trying to decide what section I'm going to bring it under? If the other things that the people have done have been similar in the sense, you know, they didn't stop or they took off or they didn't give their name. I think if there was no injury, you wouldn't bring it under either of these sections. But this personal injury is one that, I mean, you can have a personal injury without requiring immediate medical treatment or being taken to the 401, immediate professional treatment in a medical facility or a doctor's office. That's pretty specific. You're bleeding. And my response to that is you cannot make that determination until after you've stopped, which you're required to do. I mean, even if there's Section 402, which wasn't an issue in this case, but Section 402 is the section whereby there's only vehicle damage, right? So under Section 402, you have to stop. You have to stop no matter what. Now, the fact is there may be an injury which ultimately doesn't require immediate medical attention. It wouldn't be ultimately. This fellow that got hit in this case, he walked away. He required medical attention. And I think the way that this statute is drafted, and I understand what you're saying, but I don't think that the severity of the injury is based on the subjective determination of the person who has to stop. You have to stop. That's why they make the statutory definition of what personal injury is in 401, any injury requiring immediate professional treatment in a medical facility or doctor's office. So they told you what the circumstances are under which you have to deal. Correct. Which doesn't exist in 403. That's true. However, 403 encompasses that because it's any injury. In any case, it's an injury to or death of any person or damage to any vehicle. So 403 could be just damage to the vehicle. It doesn't require you to stay. It requires you to make sure that you've given the information at some point in time. Your Honor, if there was only damage to the vehicle, my client would have been charged under 402. The alternative would be to be charged 402. The fact that one, there was no evidence about what happened to the bike, but I suppose they could have charged him if the guy's bike was damaged. Or if the guy on the bike had run off and my client's truck was damaged, the tables would have been turned. But I think, you know, getting caught up on the fact that one statute encompasses more, encompasses greater, has a greater scope than another statute, doesn't necessarily defeat the proportionate penalties problem here.  Well, yes, that's because then you don't have identical elements. Right? I mean, the more serious the injury, that makes 11-401, well, that's a Class 2 felony. Less serious injury is 403. Yes, but if you look at the second paragraph of 403, if the person is not in a, let's say the victim, is in a condition to receive or understand the information that you would be exchanging, and no police officer is present, after you've rendered assistance, you can go report it to the police. Yes, but the nature of the injury makes the elements of 403 different than the elements of 401, right? I would argue that the second paragraph of 403 encompasses, I mean, I'm not a doctor, but if I hit somebody and they're in no condition to take my driver's license information, that certainly, I think, constitutes an injury that requires immediate medical attention. I don't know if I'm making sense. But if you look at the second paragraph of 403, it addresses a circumstance in which it's a Class A misdemeanor for not reporting, even if you laid somebody out in the street and left. Would that be the prosecutor's decision? I don't understand your answer. It would be the prosecutor's decision whether the charge is more serious or less serious. That's true. And I could find no case in which a circumstance like this resulted in a misdemeanor charge. But nonetheless, in 1977... Well, that may be, Your Honor. But I think that my point here to your question is that the... I don't believe that the definition of injury in 401 defeats... It isn't a question of it defeating it. It means that the statutes are not identical. And the single factor that... Not necessarily the single factor, but an important factor in a prosecutor deciding which to charge would be to look at both statutes and say, in this case, the guy had to be in the hospital for seven days. That's more serious. And this statute says, hospitalization, I'm going to prosecute for the Class II felony. I don't understand how you... I mean, I'm not grasping how that's a proportionate penalty issue. Well, I think that it is not explicitly stated in Section 403 that the injury has to be X, Y, or Z. But the fact that the second paragraph of 403 addresses the circumstance in which someone is... Basically, it says, you know, they're not in a condition to receive and understand such information, which to me suggests a serious injury. What about if the person you struck is intoxicated? Well, again, that is... They might not be able to receive the information, but they don't need medical treatment. They don't need to be taken to a hospital. That could be. That's a problem. The point here, really, is that 403 is the basic requirement necessary for providing information. And 401 is the requirement to provide that information if, in fact, it turns out that there is a personal injury involving immediate professional treatment in a medical facility or doctor's office. It's just that there's two different grades. It's not that they're the same offense. They're just two different levels. In the first one, you are required to stop, stay, or immediately return. The second one doesn't have that requirement. 403 doesn't require that. You are permitted to leave in 403. The key trigger there for that offense also is you have to report it to the police. I mean, you can leave in both of these circumstances. You know, Section B of 401 has that saving sentence at the last... I believe the last sentence of 401B says something along the lines of, If you comply with Section B, then you can't be held responsible for violating A. If, as soon as possible, you do what's said. But no later than 30 minutes. And that gets into the timing issue that we raise in our briefs. So the first one, really, is you're required to stop, stay, or return. The second one has no such requirement. 403 has no such requirement. Not explicitly, but I don't believe you can exchange information or render aid without stopping and staying. And, you know, the state brought this up in their brief. I mean, not to be flip, but you're not going to throw some Band-Aids in your driver's license out the window as you drive past the person you laid out in the street. And that element certainly, in my mind, is identical. It need not explicitly be spelled out because it's implicit in complying with 403. You have to stop. If we could go back to, I think, one of Justice Connick's very first questions. Isn't the element of personal injury an element of the offense in 401? Personal injury, such as... A finder of fact would have to determine that it was an injury that required immediate professional treatment in a medical facility or doctor's office. Would they not? I suppose they would. Okay, and then jury instruction. And there is no such element in 403. I believe it's implicit in 403. Implicit or not, the jury's not going to have to get a special instruction on it. The state doesn't have to establish that particular element. Well, if they charged it, they'd have to say, this is the driver of a vehicle involved in a motor vehicle accident who, let's use this circumstance. If you're going under 403, resulting in injury, and he didn't stop and render aid, and he didn't, which is what my client was convicted of, he didn't report to the police under that statute. So... But in 403, they wouldn't have to show that it was an injury requiring immediate professional treatment in a medical facility or doctor's office, right? Well, I would argue that under 403, you would have to show that, you know, if the person was in no condition to receive an under... That's a different issue. That's a subparagraph B. That's a completely different factual circumstance there. Well, it's all in... It's the second paragraph of 403. You're right. But I believe that's an element, and I believe that element encompasses... If the preceding facts are true, namely that the person is not capable of receiving the information. Correct. But if that doesn't exist, you have, boom, he falls down. Through 403, all the state has to show is that there was some injury, and the person didn't get the information. Through 401, they have to show it is an injury requiring immediate professional treatment in a medical facility or doctor's office. There is going to be instruction on that, but it's an element of the offense. It's an element of 401 that doesn't exist in 403, which would mean there's no proportionate penalty. I understand what you're saying, Your Honors. Respectively, I disagree. I believe that the element is implicit in 403. Actually, the elements are identical in 403 as they are in 401, and I know what you're saying. I don't want to go around all that. No, I get it. What you're saying is that the instructions just don't mirror what the current state of the law is. I confess, Your Honor, I did not find an instruction for 403, but I believe that... That doesn't mean your argument fails. I'm kidding. But you did find the jury instructions for 401, correct? They were in the record, Your Honor. And they state in the notes under the jury instructions that if the personal injury is an issue, whether there was one, then you give the definition in another instruction set out, I think it's a couple pages after the 401 IPIs. You saw that, didn't you? Yes, Your Honor. Okay. Well, that language isn't in 403. So I don't understand how you say that they're the same, they require the same thing when one has additional language.  Is that, I mean... What I think, Your Honor, is this, the amendment of 403, I think was done without necessarily thinking through the consequence. Nothing has changed, as far as I can tell, and I look back to the Motor Vehicle Code of 1957, with few exceptions, the language of 401 has remained the same. The penalties have gone up a little, but it was not amended at the time 403 was amended. And I think that the issue is, as I've said, the injury is encompassed in the language of 403. As I also said, I don't have a jury instruction. I could certainly see if there's a non-IPI. But I get your point, though. The fact that there is or isn't a jury instruction doesn't necessarily mean it doesn't violate the proportionate penalty, I guess. Correct, Your Honor. That's what I'm trying to say. It's a long way of saying what I'm trying to say. So, unless Your Honors have any other questions, really, I understand the sticking point for Your Honors. Unless you have any other questions, I... Well, I'm curious as you quoted the statute, but you didn't quote the section that I recited back to you. You left that out. And I don't think the state commented on it either. I'm not even suggesting that you did that purposely. That's not what I mean. I mean that your take on the case made you think that that section or that sentence didn't matter. Essentially, that's what you're saying. But if that's one of the first things that leaps out at these three dullards who have to decide your case, if that's the first thing that leaps out, it just seems as if that section means something. And I guess it would be up to us to interpret in this instance. But thank you for your argument. Thank you, Your Honor. Good afternoon, Your Honors. Counsel, I'm not going to say much because I think the court has actually made a far better argument than the state made. Fortunately, that language did not jump out at me as it has jumped out with the court. I think that's another distinguishing factor between the two sections that are at issue here this afternoon. The question is whether or not you can charge one without having violated the other. And I think that the court has brought up yet another indication or scenario under which that can be done. The prosecutor would have to prove under 401 that a personal injury pursuant to the definition provided in that statute has been suffered by the offended party. That's not part of 403. We think there's other distinguishing factors as well. We think you can be charged with 403 without being charged with 401. You could be on the scene and refuse to give information. But you could stay on the scene until dismissed by the police officer. That would make you conforming with 401 but violating 403. You could not stop, leave the scene, and report it 45 minutes, an hour, several hours later. That would make you in violation of 401 but conforming with 403. So we think there are, in addition to the factor of personal injury brought up by the court this afternoon, we think there are distinguishing elements between both offenses. We do not find the two offenses to be identical and therefore proportionate penalties do not apply. If there are no further questions, Your Honor, thank you very much. Paul? Just very, very briefly, Your Honor. I want to address this idea of being able to comply with 401 without complying with 403 by staying on the scene and not, you know, not complying. As I said in the briefs, 401 explicitly incorporates 403. So you cannot stay on the scene and comply with 401 without complying with 403 or vice versa. So that's all I wish to say, unless Your Honors have any other questions. Thank you. Thank you.